**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF ARKANSAS**
**LITTLE ROCK DIVISION**

IN RE: Cristye L. Walker fka                    CASE NO.: 4:16-bk-11331
        Cristye James
                                                Chapter 13
        Debtor

## MOTION FOR RELIEF FROM STAY

Comes now U.S. Bank Trust National Association, as Trustee of the SCIG Series III Trust ("Movant/Creditor"), by and through its attorney, Christopher K. Baxter, and for its Motion for Relief from Stay, states as follows:

1.      Cristye L. Walker fka Cristye James ("Debtor") filed the Voluntary Petition for Chapter 13 bankruptcy on March 11, 2016.

2.      On March 15, 2007, a Fixed Rate Note was executed by Cristye L. James in favor of The Carroll Mortgage Group, Inc. in the principal sum of $179,909.00. A copy of the Note is attached hereto as Exhibit "A" (the "Note").

3.      Concurrently, a Deed of Trust was executed by Cristye L. James and delivered to Mortgage Electronic Registrations Systems, Inc. ("MERS") solely as nominee for The Carroll Mortgage Group, Inc. dated March 15, 2007, upon the real property described in the Deed of Trust which is attached hereto as Exhibit "B" (the "Security Instrument") and hereafter referred to as the "Real Property."

4.      The Security Instrument was filed for record in the real estate records of Pulaski County, Arkansas on March 21, 2007, Instrument number 2007022077.

5.      The Security Instrument was duly and properly assigned to Movant/Creditor, attached hereto as Exhibit "C" (the "Assignment").

6.      As of October 28, 2019, the loan is now due for November 1, 2018 to October 1, 2019, seven (7) payments of $1,107.13, plus five (5) payments of $1,134.17, less $183.26 in suspense, totaling $13,237.50, and the principal balance remaining is $181,743.91 plus interest. Additional fees include Movant's attorney fees and costs in the amount of $1,031.00 due under the terms of the Note and Mortgage.

7.      Movant/Creditor is prohibited from protecting its interest in foreclosing due to the automatic stay.

8.      Movant/Creditor is entitled to relief from automatic stay in that Debtor has not made all payments.

9.      Pursuant to 11 U.S.C. § 362(d)(1) and § 362(d)(2), sufficient cause exists for the terminating of the automatic stay as to Movant/Creditor, its real property, and the proceeds thereof.

10.     Movant hereby consents to the continuation of the automatic stay until a hearing is held on the merits of this motion and hereby waives its right to a hearing within thirty (30) days of the date of this motion as provided by Section 362(e)(1) of the Bankruptcy Code.

**WHEREFORE**, the Movant/Creditor, prays:

1.      That it be relieved from the automatic stay pursuant to 11 U.S.C. § 362 and abandonment of the real property and waive the 14-day stay described by Bankruptcy Rule 4001 (a)(3) so that it may proceed with its regular and customary collection activities.

2.      For such other and further relief to which it may be entitled and all other just and proper relief for which it is entitled.

Respectfully submitted,

MARINOSCI & BAXTER
MARINOSCI LAW GROUP, P.C.

*/s/ Christopher K. Baxter*
Christopher K. Baxter
State Bar Number: 2008102
14643 Dallas Parkway, Suite 750
Dallas, TX 75254
Telephone: 972-331-2300
Facsimile: 972-331-5240
Email: ARMS-BK@mlg-defaultlaw.com

## **RIGHT TO FORECLOSE STATEMENT**

Debtor executed a promissory note secured by a mortgage or deed of trust. The promissory note is either made payable to Creditor or has been duly endorsed. Creditor, directly or through an agent, has possession of the promissory note. Creditor is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust.

## **CERTIFICATE OF SERVICE**

I, *Christopher K. Baxter,* certify that a true and correct copy of the Motion for Relief from Stay and Co-Debtor Stay was placed in the U.S. Mail with sufficient postage affixed hereto or via ECF/Electronic Mail as to guarantee proper delivery to the attached mailing matrix on this _31st day of ___October, 2019_____.

*/s/Christopher K. Baxter*
Christopher K. Baxter

Label Matrix for local noticing
0860-4
Case 4:16-bk-11331
Eastern District of Arkansas
Little Rock
Thu Oct 31 09:21:53 CDT 2019

CitiMortgage, Inc.
P.O. Box 688971
Des Moines, IA 50368-8971

Arkansas DF&A
c/o Revenue Legal Counsel
PO Box 1272, Room 2380
Little Rock, AR 72203-1272

Arkansas Dept. of Finance & Admin
P.O. Box 1272
Little Rock, AR 72203-1272

Christopher K. Baxter
MARINOSCI & BAXTER
14643 Dallas Parkway
Suite 750
Dallas, TX 75254-8884

Aaron David Caldwell
MICKEL LAW FIRM, P.A.
1501 N. University Ave., Ste. 930
Little Rock, AR 72207-5298

Capital One
Attn: Bankruptcy
PO Box 30285
Salt Lake City, UT 84130-0285

Capital One Bank (USA), N.A.
PO Box 71083
Charlotte, NC  28272-1083

Capital One/Best Buy
Attn: Bankruptcy Dept.
PO Box 30285
Salt Lake City, UT 84130-0285

Chase Card Services
Attn: Correspondence Dept
PO Box 15298
Wilmington, DE 19850-5298

Citimortgage Inc
Attn: Bankruptcy
PO Box 6423
Sioux Falls, SD 57117

Discover Bank
Discover Products Inc
PO Box 3025
New Albany, OH 43054-3025

Discover Financial
Attn: Bankruptcy
PO Box 3025
New Albany, OH 43054-3025

Equifax Credit Information
Services, Inc.
PO Box 740241
Atlanta, GA 30374-0241

Experian
PO Box 2002
Allen, TX 75013-2002

Jack W. Gooding
Chapter 13 Standing Trustee
P.O. Box 8202
Little Rock, AR 72221-8202

IRS
Centralized Insolvency Op.
P. O. Box 7346
Philadelphia, PA 19101-7346

Scott Allen Jones
WILSON & ASSOCIATES, PLLC
1521 Merrill Dr., Suite D220
Little Rock, AR 72211-1654

Kathryn Alley Lachowsky
Wilson and Associates, PLLC
400 West Capitol Ave., Suite 1400
Little Rock, AR 72201-3562

Caroline Curry Lewis
BRAD HENDRICKS LAW FIRM
500 C Pleasant Valley Drive
Little Rock, AR 72227-2137

Heather R. Martin-Herron
Wilson & Associates, PLLC
400 W. Capitol Avenue
Suite 1400
Little Rock, AR 72201-3562

Mickel Law Firm
1501 N. University Ave
Ste 966
Little Rock, AR 72207-5238

Navient
Attn: Claims Dept
PO Box 9500
Wilkes-Barr, PA 18773-9500

(p)ASCENDIUM EDUCATION SOLUTIONS  INC
PO BOX 8961
MADISON WI 53708-8961

(p)PORTFOLIO RECOVERY ASSOCIATES LLC
PO BOX 41067
NORFOLK VA 23541-1067

Recovery Management Systems Corporation
25 S.E. 2nd Avenue, Suite 1120
Miami, FL 33131-1605

Rushmore Loan Management Services LLC
P.O. Box 52708
Irvine, CA 92619-2708

Transunion
PO Box 2000
Chester, PA 19016-2000

U.S. Bank Trust National Association
c/o BSI Financial Services
1425 Greenway Drive, Ste 400
Irving, TX 75038-2480

U.S. Department of Housing and Urban Develop
451 7th Street S.W.
Washington, DC 20410-0002

```
U.S. Trustee (ust)                          Cristye L. Walker
Office Of U. S. Trustee                      59 Chateaus Lane
200 W Capitol, Ste. 1200                     Little Rock, AR 72210-5810
Little Rock, AR 72201-3618
```

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

```
Navient Solutions, Inc. on behalf of USAF    Portfolio Recovery Associates, LLC
Attn: Bankruptcy Litigation Unit E3149       POB 12914
P.O. Box 9430                                Norfolk VA 23541
Wilkes-Barre, PA 18773-9430
```

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

```
(u)BSI Financial Services        (u)CitiMortgage, Inc.            (d)Rushmore Loan Management Services LLC
                                                                 P.O. Box 52708
                                                                 Irvine, CA 92619-2708


(u)US Bank Trust NA              End of Label Matrix
                                Mailable recipients    31
                                Bypassed recipients     4
                                Total                  35
```

# EXHIBIT "A"

Multistate

# NOTE

FHA Case No

March 15, 2007
[Date]

59 Chateaus Lane Little Rock AR 72210
[Property Address]

## 1 PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns "Lender" means

The Carroll Mortgage Group, Inc

and its successors and assigns

## 2 BORROWER'S PROMISE TO PAY, INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of

One Hundred Seventy Nine Thousand Nine Hundred Nine and no/100

Dollars (U S $ 179 909 00                ), plus interest, to the order of Lender Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of Five and Seven / Eighths percent (     5 8750       %) per year until the full amount of principal has been paid

## 3 PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument" The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note

## 4 MANNER OF PAYMENT

**(A) Time**

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on May 1      , 2007     Any principal and interest remaining on the first day of        April        , 2037   , will be due on that date, which is called the "Maturity Date "

**(B) Place**

Payment shall be made at 9101 North Rodney Parham, Little Rock  AR 72205                     or at such place as Lender may designate in writing by notice to Borrower

**(C) Amount**

Each monthly payment of principal and interest will be in the amount of U S $1,064 23         This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument

**(D) Allonge to this Note for payment adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note [Check applicable box]

☐ Graduated Payment Allonge   ☐ Growing Equity Allonge   ☐ Other [specify]

## 5 BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes

**6  BORROWER'S FAILURE TO PAY**

**(A)  Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four                            percent (        4 0000              %) of the overdue amount of each payment

**(B)  Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest  Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default  In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults  This Note does not authorize acceleration when not permitted by HUD regulations  As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee

**(C)  Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law  Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note

**7  WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor  "Presentment" means the right to require Lender to demand payment of amounts due  "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid

**8  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address

**9  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note  Lender may enforce its rights under this Note against each person individually or against all signatories together  Any one person signing this Note may be required to pay all of the amounts owed under this Note

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note

_____ (Seal)         (Seal)
-Borrower                                       Cristye L  James                         -Borrower

_____ (Seal)        _____ (Seal)
-Borrower                                       -Borrower

_____ (Seal)        _____ (Seal)
-Borrower                                       -Borrower

_____ (Seal)        _____ (Seal)
-Borrower                                       -Borrower

Pay to the Order of
CitiMortgage, Inc.

Without Recourse
The Carroll Mortgage Group, Inc.
By _____
James R Carroll, President & CEO

PAY TO THE ORDER OF

WITHOUT RECOURSE ON US
CitiMortgage, Inc

BY _____
WILLIAM S FELTS, Vice President
CitiMortgage, Inc

# EXHIBIT "B"

2007022077
03/21/2007 09:19:53 AM
Filed & Recorded in
Official Records of
PAT O'BRIEN
PULASKI COUNTY
CIRCUIT/COUNTY CLERK
Fees $32.00

Return To:
The Carroll Mortgage Group,
Inc.
9101 North Rodney Parham,
Little Rock, AR 72205

Prepared By:
James R. Carroll

1477 Highway 113 South
Bigelow, AR. 72016

─────────────── [Space Above This Line For Recording Data] ───────────────

**State of Arkansas**

# DEED OF TRUST

| FHA Case No. |
|---|
| ██████████ |

MIN ████████████████████

THIS DEED OF TRUST ("Security Instrument") is made on      March 15, 2007    .
The Grantor is   Cristye L. James, An Unmarried Person

("Borrower"). The trustee is   James R. Carroll,

whose address is   9101 N. Rodney Parham Rd. Ste1, Little Rock, AR 72205

("Trustee"). The Beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
The Carroll Mortgage Group, Inc., Subchapter "S" Corporation

("Lender") is organized and existing under the laws of      Arkansas     , and has an address of 9101 North Rodney Parham, Little Rock, AR 72205
. Borrower owes Lender the principal sum of
One Hundred Seventy Nine Thousand Nine Hundred Nine and no/100

Dollars (U.S. $ 179,909.00      ).

0

██████      ██████
**FHA Arkansas Deed of Trust with MERS - 4/96**
-4N(AR) (0404)        Amended 2/98
Page 1 of 9    MW 04/04      Initials: _____
VMP Mortgage Solutions, Inc. (800)521-7291





This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on April 1, 2037 . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, with the power of sale, the following described property located in Pulaski County, Arkansas:

LOT 25, CHATEAUS ON STAGECOACH NEIGHBORHOOD, AN ADDITION TO THE CITY OF LITTLE ROCK, PULASKI COUNTY, ARKANSAS.

Parcel ID Number:
which has the address of 59 Chateaus Lane [Street]
Little Rock [City], Arkansas 72210 [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."





Initials: _____ 0

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

<u>First,</u> to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

<u>Second,</u> to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

<u>Third,</u> to interest due under the Note;

<u>Fourth,</u> to amortization of the principal of the Note; and

<u>Fifth,</u> to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating





Initials: 

0

circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

    **(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.








**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

    (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

    (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

    **10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

    **11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

    **12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.




**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.





Initials:   0

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding and sale of the Property. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

It is understood and agreed to by Borrower that this Security Instrument is subject to the foreclosure procedures of the Arkansas Statutory Foreclosure Law, Act 53 of 1987, as amended from time to time (the "Act"), for Borrower's breach of any covenant or agreement in this Security Instrument. In furtherance and not in limitation of the provisions of paragraph 11, any forbearance by Lender in exercising any right or remedy under the Act shall not be a waiver of or preclude acceleration and the exercise of any right or remedy under the Act, or at the option of Lender, use of judicial foreclosure proceedings.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act")(12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment in full of all sums secured by this Security Instrument, Lender shall release this Security Instrument. The release shall be made without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waivers.** Borrower waives all rights of homestead exemption in, and statutory redemption of, the Property and all right of appraisement of the Property and relinquishes all rights of curtesy and dower in the Property.

**21. Substitute Trustee.** Lender, at its option and with or without cause, may from time to time appoint a successor Trustee in accordance with Act 53 of 1987, as amended from time to time.

**22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider     ☐ Growing Equity Rider     ☐ Other [specify]
☐ Planned Unit Development Rider     ☐ Graduated Payment Rider







BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____


_____ *Cristye S. James* _____ (Seal)
Cristye Q. James                               -Borrower


_____                    _____ (Seal)
                                                                    -Borrower


_____ (Seal)             _____ (Seal)
                    -Borrower                                       -Borrower


_____ (Seal)             _____ (Seal)
                    -Borrower                                       -Borrower


_____ (Seal)             _____ (Seal)
                    -Borrower                                       -Borrower

**STATE OF ARKANSAS,**

On this the 15th day of March 2007

**County ss:** Pulaski

, before me, the undersigned officer,

personally appeared Cristye L. James

known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she (they) executed the same for the purposes therein contained. consideration and

In witness whereof I hereunto set my hand and official seal.

_Billy Roehrenbeck_

Notary Public Billy Roehrenbeck

My Commission Expires: February 1, 2015

Lien Holder:

Address:

Telephone Number:
Contact

for release of lien.

0

Initials:

# EXHIBIT "C"

201█ █082 Received: 8/7/2013 10:32:34 AM
Recorded: 08/07/2013 11:29:19 AM Filed &
Recorded in Official Records of Larry Crane.
PULASKI COUNTY CIRCUIT/COUNTY CLERK
Fees $20.00



When Recorded Return To:
CT LIEN SOLUTIONS
PO BOX 29071
GLENDALE, CA 91209-9071
Phone #: 800-331-3282

This Instrument Prepared by:
CITIMORTGAGE, INC
BRANDON BOLEYJACK
1000 TECHNOLOGY DRIVE, MS 321
O'FALLON, MO 63368-2240

# ASSIGNMENT OF DEED OF TRUST

MERS SIS # 888-679-6377 MIN: ███████████

NOW ALL MEN BY THESE PRESENTS:
FOR VALUE RECEIVED, the receipt and sufficiency of which are hereby acknowledged, the undersigned, Mortgage Electronic Registration Systems, Inc. as nominee for The Carroll Mortgage Group, Inc., its successors and assigns ("Assignor"), hereby grants, sells, conveys, transfers and assigns to  CitiMortgage, Inc. ("Assignee") all of its right, title and interest in and to a certain Mortgage executed by Cristye L. James to Original Beneficiary Name: Mortgage Electronic Registration Systems, Inc. as nominee for The Carroll Mortgage Group, Inc. its successors and assigns in   Instrument No: 2007022077 Register's Office for Pulaski County, Arkansas (the "Mortgage").

Description/Additional information: Lot 25, Chateaus on Stagecoach Neighborhood, an Addition to the City of Little Rock, Pulaski County, Arkansas.
Assignor warrants that it is the beneficiary of record of the Mortgage, with full power to sell and assign the same; that it has executed no prior assignment or pledge thereof.
DATE: _____ 8/1/13 _____

Page # 1 ████████████

Mortgage Electronic Registration Systems, Inc. as nominee for The Carroll Mortgage Group, Inc. its successors and assigns

By: Charles L. Edmonson
Assistant Secretary


STATE OF **MISSOURI, ST. CHARLES COUNTY**

On _____ **8·1/3** _____ before me, the undersigned, a notary public in and for said state, personally appeared **Charles L. Edmonson, Assistant Secretary** of **Mortgage Electronic Registration Systems, Inc. as nominee for The Carroll Mortgage Group, Inc. its successors and assigns** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

TONJA BROOKS
Notary Public - Notary Seal
State of Missouri
Commissioned for St. Louis County
My Commission Expires: July 25, 2016
Commission Number: 12372473

Notary Public **Tonja Brooks**

Commission Expires: 07/25/2016

Page # 2



 2017023088

PRESENTED: 04-13-2017 10:33:11 AM   RECORDED: 04-13-2017 10:33:11 AM

In Official Records of Larry Crane Circuit/County Clerk

PULASKI CO, AR FEE $20.00

**When Recorded Return to:**
Attn: LR Department (Cust: 671)
T.D. Service Company
4000 W. Metropolitan Drive, Suite 400
Orange, CA 92868

 ollateral

This Instrument Prepared by:
CITIMORTGAGE, INC
TONJA BROOKS
1000 TECHNOLOGY DRIVE, MS 321
O'FALLON, MO 63368-2240

# ASSIGNMENT OF DEED OF TRUST AND OTHER LOAN DOCUMENTS

CitiMortgage, Inc.  whose address is 1000 Technology Drive, O'Fallon, MO, 63368 ("Assignor"), in consideration of Ten Dollars ($10.00) and other good and valuable consideration received by Assignor, hereby assigns, transfers, sets over and conveys to the Secretary of Housing and Urban Development whose address is 451 7th Street S.W. Washington, DC 20410 and his/her successors and assigns, without recourse, the following:

1. that certain Deed of Trust dated 03/15/2007 and recorded as Instrument Number 2007022077  in Book/Volume/Liber/Register/Reel NA at Page/Folio NA among the land records of Pulaski County,  as amended or modified (the "Deed of Trust"), which Deed of Trust  secures that certain promissory note dated 03/15/2007 (the "Note"); and

2. such other documents, agreements, instruments and other collateral that evidence, secure or otherwise relate to Assignor's right, title or interest in and to the Deed of Trust and/or the Note, including without limitation the title insurance policies and hazard insurance policies that might presently be in effect.

TO HAVE AND TO HOLD unto Assignee and its successors and assigns forever.

Borrower Name: Cristye L. James
Legal Description: Lot 25, Chateaus on Stagecoach Neighborhood, an Addition to the City of Little Rock, Pulaski County, Arkansas.
Trustee Name: James R. Carroll
Original Beneficiary: Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for The Carroll Mortgage Group, Inc. its successors and assigns

Page # 1

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed and delivered by its duly authorized officer as of the CitiMortgage, Inc. day of _____ 11/1/16 _____.

CitiMortgage, Inc.

_____
By: Charles L. Edmonson
Assistant Vice President


STATE OF **MISSOURI, ST. CHARLES COUNTY**

On _____ 11-1-2016 _____ before me, the undersigned, a notary public in and for said state, personally appeared **Charles L. Edmonson, Assistant Vice President** of **CitiMortgage, Inc.** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public Jill Tyner

JILL TYNER
Notary Public - Notary Seal
State of Missouri
Commissioned for St. Charles County
My Commission Expires: June 20, 2020
Commission Number: 12357877

Commission Expires: 06/20/2020

2017023089





PRESENTED: 04-13-2017 10:33:12 AM      RECORDED: 04-13-2017 10:33:12 AM

In Official Records of Larry Crane Circuit/County Clerk

PULASKI CO, AR FEE $20.00

**When Recorded Return to:**
Attn: LR Department (Cust: 671)
T.D. Service Company
4000 W. Metropolitan Drive, Suite 400
Orange, CA 92868



This Instrument Prepared by:
CITIMORTGAGE, INC
TONJA BROOKS
1000 TECHNOLOGY DRIVE, MS 321
O'FALLON, MO 63368-2240

# ASSIGNMENT OF DEED OF TRUST AND OTHER LOAN DOCUMENTS

Secretary of Housing and Urban Development  whose address is 451 7th Street S.W., Washington, DC, 20410 ("Assignor"), in consideration of Ten Dollars ($10.00) and other good and valuable consideration received by Assignor, hereby assigns, transfers, sets over and conveys to the U.S. Bank National Association, not in its individual capacity but solely as trustee for the RMAC Trust, Series 2016-CTT whose address is 60 Livingstone Avenue St. Paul, MN 55107-2292 and his/her successors and assigns, without recourse, the following:

1. that certain Deed of Trust dated 03/15/2007 and recorded as Instrument Number 2007022077  in Book/Volume/Liber/Register/Reel NA at Page/Folio NA among the land records of Pulaski County,  as amended or modified (the "Deed of Trust"), which Deed of Trust  secures that certain promissory note dated 03/15/2007 (the "Note"); and

2. such other documents, agreements, instruments and other collateral that evidence, secure or otherwise relate to Assignor's right, title or interest in and to the Deed of Trust and/or the Note, including without limitation the title insurance policies and hazard insurance policies that might presently be in effect.

TO HAVE AND TO HOLD unto Assignee and its successors and assigns forever.

Borrower Name: Cristye L. James
Legal Description: Lot 25, Chateaus on Stagecoach Neighborhood, an Addition to the City of Little Rock, Pulaski County, Arkansas.
Trustee Name: James R. Carroll
Original Beneficiary: Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for The Carroll Mortgage Group, Inc. its successors and assigns

Page # 1

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed and delivered by its duly authorized officer as of the Secretary of Housing and Urban Development day of _____2. 3. 2017_____.

Secretary of Housing and Urban Development by Rushmore Loan Management Services LLC, Its Attorney in Fact

By: _____
_____
          Glenn Walters
          Sr. Vice President

STATE OF __Texas_____, __Dallas_____

On __2-3-17_____ before me, the undersigned, a notary public in and for said state, personally appeared __Glenn Walters____, __SVP_____ of **Secretary of Housing and Urban Development by Rushmore Loan Management Services LLC, Its Attorney in Fact** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

BRADLEY J. GORZ
Notary Public, State of Texas
Comm. Expires 01-16-2021
Notary ID 130963867

Notary Public   **Bradley J Gorz**  _____

Commission Expires: _1-16-21_____

2018012264
PULASKI CO. AR FEE $20.00
PRESENTED & RECORDED
02/28/2018 03:57:48 PM
LARRY CRANE
Circuit / County Clerk
BY: RACHEAL JULIAN
DEPUTY RECORDER



Prepared By and Return To:
Kathleen Collins
Collateral Department
Meridian Asset Services, Inc.
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

Space above for Recorder's use

Loan No:
Svcr Ln No:

## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR THE RMAC TRUST, SERIES 2016-CTT**, whose address is **60 LIVINGSTON AVENUE, EP-MN-WS3D, ST. PAUL, MN 55107**, (ASSIGNOR), does hereby grant, assign and transfer to **US BANK TRUST N.A., AS TRUSTEE OF THE IGLOO SERIES III TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: **3/15/2007**
Original Loan Amount: **$179,909.00**
Executed by (Borrower(s)): **CRISTYE L. JAMES**
Original Trustee: **JAMES R. CARROLL**
Original Beneficiary: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR THE CARROLL MORTGAGE GROUP, INC., SUBCHAPTER "S" CORPORATION, ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Book N/A, Page N/A,
Document/Instrument No: 2007022077 in the Recording District of **PULASKI, AR**, Recorded on 3/21/2007.

Property more commonly described as: **59 CHATEAUS LANE, LITTLE ROCK, ARKANSAS 72210**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: _1/8/18_

**U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR THE RMAC TRUST, SERIES 2016-CTT, BY RUSHMORE LOAN MANAGEMENT SERVICES, LLC, ITS APPOINTED ATTORNEY-IN-FACT**

By: Drew Edwards
Title: Assistant Vice President

Witness Name: Eric Wright

> A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of ___**TEXAS**___
County of ___**DALLAS**___

On ___**JAN 0 8 2018**___, before me, ___**Nicole Johnson**___, a Notary Public, personally appeared ___**Drew Edwards**___, ___**Assistant Vice President**___ of/for **RUSHMORE LOAN MANAGEMENT SERVICES, LLC, AS APPOINTED ATTORNEY-IN-FACT FOR U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR THE RMAC TRUST, SERIES 2016-CTT,** personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of ___**TEXAS**___ that the foregoing paragraph is true and correct. I further certify ___**Drew Edwards**___, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): **Nicole Johnson**
My commission expires: ___4/8/21___

NICOLE JOHNSON
My Notary ID # 129379313
Expires April 8, 2021

**2018022385**

PULASKI CO. AR FEE $20.00

PRESENTED & RECORDED

**04/13/2018 08:03:03 AM**

LARRY CRANE
Circuit / County Clerk

BY: BRITTANY PARKS
DEPUTY RECORDER

Prepared By and Return To:
Kathleen Collins
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650



Loan No: ▇▇▇▇▇▇
Svcr Ln No: ▇▇▇▇▇▇▇

Space above for Recorder's use

## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **US BANK TRUST N.A., AS TRUSTEE OF THE IGLOO SERIES III TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251, (ASSIGNOR)**, does hereby grant, assign and transfer to **US BANK TRUST N.A., AS TRUSTEE OF THE SCIG SERIES III TRUST**, whose address is **7114 E. STETSON DRIVE SUITE 250, SCOTTSDALE, ARIZONA 85251, (ASSIGNEE)**, its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: **3/15/2007**
Original Loan Amount: **$179,909.00**
Executed by (Borrower(s)): **CRISTYE L. JAMES**
Original Trustee: **JAMES R. CARROLL**
Original Beneficiary: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR THE CARROLL MORTGAGE GROUP, INC., SUBCHAPTER "S" CORPORATION, ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Book N/A, Page N/A,
Document/Instrument No: 2007022077 in the Recording District of **PULASKI, AR**, Recorded on **3/21/2007**.

Property more commonly described as: **59 CHATEAUS LANE, LITTLE ROCK, ARKANSAS 72210**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: _4-6-18_

**US BANK TRUST N.A., AS TRUSTEE OF THE IGLOO SERIES III TRUST, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**

By: MATTHEW KRUEGER
Title: **VICE PRESIDENT**

Witness Name: **DYLAN SMITH**

> A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of **FLORIDA**
County of **PINELLAS**

On **4-6-18**, before me, **GERALD E. MURCH**, a Notary Public, personally appeared **MATTHEW KRUEGER, VICE PRESIDENT of/for MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR US BANK TRUST N.A., AS TRUSTEE OF THE IGLOO SERIES III TRUST,** personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.  I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct.  I further certify MATTHEW KRUEGER, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): **GERALD E. MURCH**
My commission expires: **02/13/2022**

GERALD E MURCH
Commission # GG 171364
Expires February 13, 2022
Bonded Thru Budget Notary Services

After Recording Return To:
**Rushmore Loan Management Services LLC**
**15480 Laguna Canyon Road**
**Irvine, California 92618**
**1-888-504-6700**

This Instrument Prepared By:
Srdjan Njego
**Rushmore Loan Management Services LLC**
15480 Laguna Canyon Road
Irvine, California 92618

_____ [Space Above This Line For Recording Data] _____

Original Loan Amount: **$179,909.00**                                   Loan No: ███████████

# LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement"), made this **26th** day of **April, 2017**, between **CRISTYE L. JAMES, AN UNMARRIED PERSON** ("Borrower") and **Owner, by and through Rushmore Loan Management Services LLC, as current servicer and agent, whose address is 15480 Laguna Canyon Road, Irvine, California 92618** ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated **March 15, 2007** and recorded in **Instrument No: 2007022077**, of the Official Records of **PULASKI County, AR** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

**59 CHATEAUS LANE, LITTLE ROCK, AR 72210,**
(Property Address)

the real property described being set forth as follows:

LOT 25, CHATEAUS ON STAGECOACH NEIGHBORHOOD, AN ADDITION TO THE CITY OF LITTLE ROCK, PULASKI COUNTY, ARKANSAS

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument - Arkansas                    Form 3179 1/01 (rev. 4/14)
Mortgage Cadence Document Center © 8826 08/14                                                                                                          (page 1 of 6)

1. As of **April 26, 2017**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$187,875.68**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **3.750%** from **January 01, 2017**, and Borrower promises to pay monthly payments of principal and interest in the amount of U.S. **$870.08** beginning on the **1st** day of **February, 2017**. If on **January 1, 2047** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a)   all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

   (b)   all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Borrower understands and agrees that:

(a)     All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)     All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)     Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)     All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)     Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f)     Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging [ ].

6. Notwithstanding anything to the contrary contained in this Agreement, Borrower and Lender acknowledge the effect of a discharge in bankruptcy that has been granted to Borrower prior to the execution of this Agreement and that Lender may not pursue Borrower for personal liability. However, Borrower acknowledges that Lender retains certain rights, including but not limited to the right to foreclose its lien evidenced by the Security Instrument under appropriate circumstances. The parties agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of Borrower's default thereunder. Nothing in this Agreement shall be construed to be an attempt to collect against Borrower personally or an attempt to revive personal liability.

7. This Agreement modifies an obligation secured by an existing security instrument recorded in PULASKI County, AR, upon which all recordation taxes have been paid. As of the date of this agreement, the unpaid principal balance of the original obligation secured by the existing security instrument is $164,504.52. The principal balance secured by the existing security instrument as a result of this Agreement is $187,875.68, which amount represents the unpaid principal balance of this original obligation.

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument - Arkansas
Mortgage Cadence Document Center © 8826 08/14

Form 3179 1/01 (rev. 4/14)
*(page 4 of 6)*

In Witness Whereof, the Lender and I have executed this Agreement.

*Cristye L. James / Cristye L. Walker* _____ (Seal)

CRISTYE L. JAMES  -Borrower   /Cristye L. Walker

_____ [Space Below This Line For Acknowledgments] _____

State of Arkansas

County of _Pulaski_____

On this _4th_ day of _May_____ , 20_17_ , before me, _Susan Marie Carter_ a Notary Public,

(or before any officer within this State or without the State now qualified under existing law to take acknowledgments), appeared the within named

___ _Cristye Lynn Walker_ _____

to me personally well known (or satisfactorily proven to be such person), who stated and acknowledged that they had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein mentioned and set forth.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this _4th_ day of _May____ , 20_17_ .

_Susan Marie Carter_____
(Notary Public)

My commission expires : _2-13-2026_ _____

```
OFFICIAL SEAL - #12347030
SUSAN MARIE CARTER
NOTARY PUBLIC-ARKANSAS
PULASKI COUNTY
MY COMMISSION EXPIRES: 02-13-26
```

Origination Company: **Rushmore Loan Management Services LLC**
NMLSR ID: ███

███████████

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument - Arkansas
Mortgage Cadence Document Center © 8826 08/14

Form 3179 1/01 (rev. 4/14)
*(page 6 of 6)*

**Rushmore Loan Management Services LLC**

By: _____   (Seal) - Lender

Name: ____Karen M. Mastro____

Title: ____Senior Vice President____

____5·12·17____

Date of Lender's Signature

_____ [Space Below This Line For Acknowledgments] _____

State of ____Texas____

County of ____Dallas____

On this __12__ day of ____May____, 20_17_, before me, **Arthur R. Finley III**, a Notary Public, (or before any officer within this State or without the State now qualified under existing law to take acknowledgments), duly commissioned, qualified and acting, within and for said County and State, appeared in person the within named ____Karen Mastro____, (being the person or persons authorized by said corporation, to execute such instrument stating their respective capacities in that behalf), to me personally well known (or satisfactorily proven to be such person), who stated that he/she was the ____SVP____ of Rushmore Loan Management Services LLC, a corporation, and was duly authorized in his/her respective capacity to execute the foregoing instrument(s) for and in the name and behalf of said corporation, and further stated and acknowledged that he/she had so signed, executed, and delivered said foregoing instrument for the consideration, uses and purposes therein mentioned and set forth.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this __12__ day of ____May____, 20_17_.

_____

(Notary Public).

My commission expires: ____3/1/2018____

ARTHUR R FINLEY III
My Commission Expires
March 1, 2018

## ERRORS AND OMISSIONS/COMPLIANCE AGREEMENT

Loan Number: ██████████

FHA/VA Case Number:

Borrower(s):   **CRISTYE L. JAMES**

Property Address:   **59 CHATEAUS LANE, LITTLE ROCK, AR 72210**

Servicer:   **Rushmore Loan Management Services LLC**

The undersigned Borrower(s) for and in consideration of the above-referenced Servicer modifying the terms of your mortgage loan, agrees that if requested by your Servicer, to fully cooperate and adjust for clerical errors, any or all loan modification documentation deemed necessary or desirable in the reasonable discretion of Servicer to enable Servicer to sell, convey, seek guaranty or market said loan to any entity, including but not limited to an investor, Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Government National Mortgage Association, Department of Housing and Urban Development, or the Department of Veterans Affairs, or any Municipal Bonding Authority.

I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial, and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

The undersigned Borrower(s) agree(s) to comply with all above noted requests by the above-referenced Servicer within 15 days from date of mailing of said requests. Borrower(s) agree(s) to assume all costs including, by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to comply with correction requests in the above noted time period.

The undersigned Borrower(s) do hereby so agree and covenant in order to assure that this loan modification documentation executed this date will conform and be acceptable in the marketplace in the instance of transfer, sale or conveyance by Servicer of its interest in and to said loan modification documentation, and to assure marketable title in the said Borrower(s).

DATED this **26th** day of **April, 2017**.

_Cristye L. James/ Cristye L. Walker_ _____ (Seal)
CRISTYE L. JAMES -Borrower /Cristye L. Walker

RECORDING REQUESTED BY:
BSI Financial Services
314 S. Franklin Street
Titusville, PA   16354

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## LIMITED POWER OF ATTORNEY

**SCIG Series III Trust ("Trust"),** by and through **U.S. Bank Trust National Association,** a national banking association organized and existing under the laws of the United States and having an office at 190 S. La Salle Street, MK-IL-SL7R,Chicago, IL 60603, not in its individual capacity but solely as Trustee ("Trustee"), hereby constitutes and appoints Servis One, Inc. d/b/a BSI Financial Services, ("Servicer"), and in its name, aforesaid Attorney-In-Fact, by and through any officer appointed by the Board of Directors of Servicer, to execute and acknowledge in writing or by facsimile stamp all documents customarily and reasonably necessary and appropriate for the tasks described in the items (1) through (12) below; provided however, that (a) the documents described below may only be executed and delivered by such Attorneys-In-Fact if such documents are required or permitted under the terms of the Trust Agreement dated as of October 10, 2017, between PRP-SC III, LLC as Depositor and Administrator, and U.S. Bank Trust National Association, as Trustee, for SCIG Series III Trust, (b) all actions taken by Servicer pursuant to this Limited Power of Attorney must be in accordance with Federal, State and local laws and procedures, as applicable and (c) no power is granted hereunder to take any action that would be either adverse to the interests of or be in the name of U.S. Bank National Association in its individual capacity.   This Limited Power of Attorney is being issued in connection with Servicer's responsibilities to service certain mortgage loans (the "Loans") held by U.S. Bank Trust National Association, as Trustee for the above referenced Trust.   These Loans are comprised of Mortgages, Deeds of Trust, Deeds to Secure Debt and other forms of Security instruments (collectively the "Security Instruments") encumbering any and all real and personal property delineated therein (the "Property") and the Notes secured thereby.

1.   Demand, sue for, recover, collect and receive each and every sum of money, debt, account and interest (which now is, or hereafter shall become due and payable) belonging to or claimed by the Trustee, and to use or take any lawful means for recovery by legal process or otherwise, including but not limited to the substitution of trustee serving under a Deed of Trust, the preparation and issuance of statements of breach, notices of default, and/or notices of sale, accepting deeds in lieu of foreclosure, evicting (to the extent allowed by federal, state or local laws) foreclosing on the properties under the Security Instruments by judicial or non-judicial foreclosure, actions for temporary restraining orders, injunctions, appointments of receiver, suits for waste, fraud and any and all other tort, contractual or verifications in support thereof, as may be necessary or advisable in any bankruptcy action, state or federal suit or any other action.

2.  Execute and/or file such documents and take such other action as is proper and necessary to defend the Trustee in litigation and to resolve any litigation where the Servicer has an obligation to defend the Trustee, including but not limited to dismissal, termination, cancellation, rescission and settlement.

3.  Transact business of any kind regarding the Loans, as the Trustee's act and deed, to contract for, purchase, receive and take possession and evidence of title in and to the Property and/or to secure payment of a promissory note or performance of any obligation or agreement relating thereto.

4.  Execute, complete, indorse or file bonds, notes, mortgages, deeds of trust and other contracts, agreements and instruments regarding the Borrowers ("Borrowers") and/or the Property ("Property") associated with each of the Loans, including but not limited to the execution of estoppel certificates, financing statements, continuation statements, releases, satisfactions, assignments, loan modification agreements, payment plans, waivers, consents, amendments, forbearance agreements, loan assumption agreements, subordination agreements, property adjustment agreements, management agreements, listing agreements, lien releases and other documents necessary to effectuate the short sale of a property secured by a Mortgage or Deed of Trust, a deed in lieu of foreclosure or related documents to facilitate the acceptance of a deed in lieu of foreclosure, purchase and sale agreements and other instruments pertaining to mortgages or deeds of trust, and execution of deeds and associated instruments, if any, conveying the Property, in the interest of the Trustee.

5.  Endorse on behalf of the undersigned all checks, drafts and/or other negotiable instruments made payable to the undersigned.

6.  Execute any document or perform any act in connection with the administration of any PMI policy or LPMI policy, hazard or other insurance claim relative to the Loans or related Property.

7.  Execute any document or perform any act described in items (3), (4), and (5) in connection with the termination of any Trust as necessary to transfer ownership of the affected Loans to the entity (or its designee or assignee) possessing the right to obtain ownership of the Loans.

8.  Subordinate the lien of a mortgage, deed of trust, or deed to secure debt (i) for the purpose of refinancing Loans, where applicable, or (ii) to an easement in favor of a public utility company or a government agency or unit with powers of eminent domain, including but not limited to the execution of partial satisfactions and releases and partial re-conveyances reasonably required for such purpose, and the execution or requests to the trustees to accomplish the same.

9.  Convey the Property to the mortgage insurer, or close the title to the Property to be acquired as real estate owned, or convey title to real estate owned property ("REO Property").

10. Execute and deliver any documentation with respect to the sale, maintenance, preservation, renovation, repair, demolition or other disposition, of REO Property acquired through a foreclosure or deed-in-lieu of foreclosure, including, without limitation: permits,

remediation plans or agreements, certifications, compliance certificates, health and safety certifications, listing agreements; purchase and sale agreements; grant / limited or special warranty / quit claim deeds or any other deed, but not general warranty deeds, causing the transfer of title of the property to a party contracted to purchase same; escrow instructions; and any and all documents necessary to effect the transfer of REO Property.

11. Execute and deliver Limited Powers of Attorney in order to further delegate the authority granted under this Limited Power of Attorney for the purpose of effectuating Servicer's duties and responsibilities under the related trust agreements.

12. To execute, record, file and/or deliver any and all documents of any kind for the purpose of fulfilling any servicing duties, including but not limited to those listed in subparagraphs (1) through (11), above, where Trustee's interest is designated, stated, characterized as or includes any reference to one or more of the following: "Delaware Trustee", "Indenture Trustee", "Owner Trustee", "Successor Trustee", "Successor in Interest", "Successor to" "Successor by Merger", "Trustee/Custodian", "Custodian/Trustee" or other similar designation.

Trustee also grants Servicer the full power and authority to correct minor ambiguities and errors in documents necessary to effect items (1) through (12) above.

In addition to the indemnification provisions set forth in the applicable servicing agreement for the Trust, Servicer hereby agrees to indemnify and hold the Trustee, and its directors, officers, employees and agents harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever incurred by reason or result of the misuse of this Limited Power of Attorney by the Servicer. The foregoing indemnity shall survive the termination of this Limited Power of Attorney and the related servicing agreements or the earlier resignation or removal of the Trustee.

Witness my hand and seal this 8th day of January, 2018.

**NO CORPORATE SEAL**

SCIG Series III Trust by
U.S. Bank Trust National Association,
as Trustee

_____
Witness: Nicholas Xeros

By: _____
Jose A. Galarza, Vice President

_____
Witness: Edward W. Przybycien Jr.

By: _____
April E. Lancsak, Vice President

_____
Attest: Julia B. Linian, Vice President

Document drafted by U.S. Bank Trust
National Association, as Trustee

## CORPORATE ACKNOWLEDGMENT

State of Illinois

County of Cook

On this 8th day of January, 2018, before me, the undersigned, a Notary Public in and for said County and State, personally appeared Jose A. Galarza, April E. Lancsak and Julia B. Linian personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons who executed the within instrument as Vice President, Vice President, and Vice President, respectively of U.S. Bank Trust National Association, a national banking association, and acknowledged to me that such national banking association executed the within instrument pursuant to its by-laws or a resolution of its Board of Directors.

WITNESS my hand and official seal.

Signature: _____
                    Vicky Eaton

OFFICIAL SEAL
VICKY EATON
Notary Public - State of Illinois
My Commission Expires Apr 17, 2019

My commission expires: 4/17/2019